# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOE J. BALTAS,<br>    Plaintiff,<br><br>    v.<br><br>WAYNE T. SALISBURY, JR., in his official and individual capacity; RUI DINIZ, in his official and individual capacity; BARRY WEINER, in his official and individual capacity; LINDA AMADO, in her official and individual capacity; STEPHANIE VITALE, in her official and individual capacity; KIMBERLY KANE, APRN-BC, in her official and individual capacity; LESLIE BRIDGMAN, in her official and individual capacity; NICOLE DILIBERO, in her official and individual capacity; BILLIE-JO GALLAGHER, in her official and individual capacity; JEAN EMBREY, in her official and individual capacity; LYNNE CORRY, in her official and individual capacity; RACHEL BRAY, in her official and individual capacity; JOSHUA MACOMBER, in his official and individual capacity; JOHN ADAMS, in his official and individual capacity; MICHAEL GASPAR, in his official and individual capacity; WAYNE ZINA, in his official and individual capacity; KRISTOF TOTH, in his official and individual capacity; JOEL MENEZES, in his official and individual capacity; MARK PALANA, in his official and individual capacity; LYNSEY MCNAMARA, in her official and individual capacity; SARA ABBOTT, in her official and individual capacity; | C.A. No. 1:24-cv-00088-MSM-AEM |

ROY WELLS, in his official and )
individual capacity, )
Defendants. )
)
)
)
)

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The plaintiff, Joe J. Baltas is a Connecticut prisoner who was relocated to Rhode Island.  Proceeding *pro se*, he brings a civil rights action pursuant to 42 U.S.C. § 1983 against defendants Rui Diniz, Barry Weiner, Linda Amado, Stephanie Vitale, Leslie Bridgman, Nicole DiLibero, Billie-Jo Gallagher, Jean Embrey, Lynne Corry, Rachel Bray, Joshua Macomber, John Adams, Michael Gaspar, Wayne Zina, Kristof Toth, Joel Menezes, Mark Palana, Lynsey McNamara, Sara Abbott, and Roy Wells, in their official and individual capacity (collectively "State Defendants").[1]

The State Defendants seek dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  (ECF No. 74.)  For the reasons below, the State Defendants' Motion to Dismiss (ECF No. 74) is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

Mr. Baltas was relocated to the Rhode Island Department of Corrections ("RIDOC") from the Connecticut Department of Corrections ("CDC") under the

---

[1] He also brings suit against Kimberly Kane, APRN-BC, in her official capacity only; however, she has separately moved to dismiss.  (ECF No. 93.)

Interstate Corrections Compact ("ICC"). (ECF No. 1 ¶¶ 37, 50–60, 83.) He has filed a thirty-three-count Complaint alleging various types of physical and psychological harm related to his placement in Rhode Island, improper medical and mental health treatment, disciplinary issues, due process violations, and defamation. (ECF No. 1.) Mr. Baltas has since been returned to the CDC. (ECF No. 87.)

Read with the leniency due to any *pro se* filing, *Instituto de Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000), Mr. Baltas' 101-page pleading alleges claims under the First and Eighth Amendments, the Religious Land Use and Incarcerated Persons Act, the Religious Freedom Restoration Act, the American with Disabilities Act, and the Rehabilitation Act. (ECF No. 1 ¶ 1.) He further alleges that he was denied certain rights and due process that he is entitled to under the Connecticut Constitution and General Laws. *Id.* He also claims that the State Defendants violated 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988; 18 U.S.C. §§ 241, 242, 371, 1519; the Fourth, Sixth, and Fourteenth Amendments of the United State Constitution; Rhode Island General Laws § 13-11-2; and Connecticut General Statutes § 18-102. *Id.*

Mr. Baltas seeks an array of relief including a declaratory judgment, a permanent injunction, reasonable attorney's fees and cost of suit, compensatory damages, punitive damages, a referral for an investigation of the conditions and allegations, and a referral for an audit of records and alleged misappropriation of funds. *Id.* ¶ K. The State Defendants move to dismiss Mr. Baltas' Complaint, arguing that he has failed to state any cognizable legal claim. (ECF No. 74.)

## II.    MOTION TO DISMISS STANDARD

"To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Rivera v. Coyne-Fague*, No. CV 19-458-WES, 2021 WL 4476833, at *2 (D.R.I. Sept. 30, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   A complaint which "pleads facts that are merely consistent with a defendant's liability" is insufficient.   *Id.* (citation and internal quotation marks omitted).

"In considering a motion to dismiss a prisoner's claim that his constitutional rights have been violated, the court must be guided by the principle that, while 'prison officials are to be accorded substantial deference in the way they run their prisons, this does not mean that [courts] will rubber stamp or mechanically accept the judgments of prison administrators.'"   *Id.* (quoting *Spratt v. R.I. Dep't of Corr.*, 482 F.3d 33, 40 (1st Cir. 2007) (internal citation and quotation marks omitted).

The allegations of a pro se litigant are held "to less stringent standards than formal pleadings drafted by lawyers . . ."   *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But a litigant's "pro se status does not insulate [them] from complying with procedural and substantive law."   *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).   "Complaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with these goals and this system; such complaints must be dismissed."

*Jefferson v. Raimondo*, No. CV 17-439 WES, 2018 WL 3873233, at *6 (D.R.I. Aug. 15, 2018).

## III.    DISCUSSION

### A.    The Plaintiff's Claims

#### 1.    Counts 1, 2, 17, and 19: Claims Related to Placement in Rhode Island

In Counts 1, 2, 17, and 19, Mr. Baltas alleges that his placement in Rhode Island was in violation of his constitutional rights and, he claims, that he should be subject to any rights established in the Connecticut Constitution in his housing and classification.  (ECF No. 1 ¶¶ 295-297, 298-299, 344-346, 354-356.)  These claims are largely moot as Mr. Baltas has been returned to Connecticut.  But the Court notes that to the extent that he claims he should have been subject to the policies and regulations of Connecticut while incarcerated in Rhode Island, he is incorrect.  Under the ICC prisoners are "subject to all the provisions of law and regulations" applicable to those who commit violations in the receiving state, so long as it is not inconsistent with the sentence already imposed.  (ECF No. 74-2 at 3.)

Further, regarding his constitutional claims, Mr. Baltas, as an inmate, has no right to be confined in a particular state. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules").  For these reasons, Counts 1, 2, 17, and 19 fail.

### 2. Counts 3–5, 14, 16, and 23: Claims Related to Placement in Restorative Housing Program

In Counts 3, 4, 5, 14, 16, and 23, Mr. Baltas alleges that his placement in solitary confinement and alleged "special management" plan violated his rights protected under the Eighth and Fourteenth Amendment. (ECF No. 1 ¶¶ 300–309, 335–337, 347–353, 363–365.)

### a. Eighth Amendment

While excessive use of disciplinary segregation and confinement can give rise to an Eighth Amendment violation, "when prison officials impose restraints that are reasonably calibrated to protect the physical safety of [other inmates]" and the restrictions are "reasonably necessary to avoid serious physical harm" to others, prison officials are not liable. *Sevegny v. Robinson*, No. 23-CV-203-JJM-PAS, 2023 WL 5549944 *6 (D.R.I. Aug. 29, 2023).

Mr. Baltas has not demonstrated he was denied a constitutional or statutory right by his placement in the Restorative Housing Unit. *Id.* ("Merely using constitutional words in a complaint are not sufficient to state a claim.") (cleaned up). Prior to his transfer to Rhode Island, the plaintiff was found guilty of threatening and assaulting CDC employees resulting in disciplinary issues, difficulty integrating into the general population, and concern for the safety of staff and other inmates. (ECF No. 1 Ex. 13.) According to the State Defendants, inmates are placed in the Restorative Housing Unit when they pose "an unacceptable risk to the safety of others, significant damage or destruction of property, or to the operation of a correctional facility." (ECF 74-1 at 15.) Although Mr. Baltas may disagree with his

placement in the Restorative Housing Program, this is not, alone, sufficient to plausibly allege a constitutional violation. *Perry v. Spencer*, 94 F.4th 136, 158 (1st Cir. 2024); *Paye v. Wall*, No. CV 17-193 WES, 2018 WL 4639119 (D.R.I. Sept. 27, 2018).

Further, prison administrators have vast discretion in the housing classification process and inmates do not enjoy a liberty interest in the RIDOC's classification system. *See Forbes v. Wall*, No. CA 14-322-ML, 2014 WL 4997289, at *4 (D.R.I. Oct. 7, 2014); *Bishop v. State*, 667 A.2d 275, 278 (R.I.1995) ("Rhode Island has not enacted any statute or regulation that gives rise to any statutory inmate liberty interest in its prison-inmate classification system."). As such, Mr. Baltas has failed to state a claim for cruel and unusual punishment based on his classification in the Restorative Housing Program.

### b. Equal Protection

Turning to Mr. Baltas' Equal Protection claim under the Fourteenth Amendment, he alleges that he is being treated differently from other inmates due to his placement in the Restorative Housing Program. (ECF No. 1 ¶¶ 100, 103.) The State Defendants argue that the plaintiff has not plausibly alleged that other members in the Restorative Housing Program are of a protected class or that he is being treated differently than other inmates in the program. (ECF No. 74-1 at 16–17.)

To state an equal protection claim under the Fourteenth Amendment, Mr. Baltas must allege facts showing that: (1) he was treated differently from "similarly

situated" individuals and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 106 (1st Cir. 2015) (internal quotation marks omitted). He has not reasonably alleged that the State Defendants treated him differently or discriminated against him because of his membership in a protected class or based on some suspect classification.

Without allegations sufficient to support "class-based" discrimination, an individual may state an equal protection claim by alleging that he or she has been intentionally and "irrationally singled out as a . . . class of one." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). A plausible class of one claim requires the plaintiff to demonstrate an "extremely high degree of similarity" with the person to whom he or she is comparing himself or herself. *Back Beach Neighbors Comm. v. Town of Rockport*, 63 F.4th 126, 131 (1st Cir. 2023). So, Mr. Baltas must demonstrate the existence of a person who is prima facie identical to him and who was treated differently. *Id.* The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose— whether personal or otherwise—is all but certain." *See Witt v. Vill. of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd.*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Mr. Baltas has not identified another inmate comparator who was treated differently.  Thus, the facts in the Complaint do not state a plausible violation of the Fourteenth Amendment Equal Protection Clause.  Accordingly, the State Defendants' Motion to Dismiss (ECF No. 74) is granted regarding Counts 3, 4, 5, 14, 16, and 23.

### 3.    Counts 6–10 and 24–28: Claims Related to Conditions of Confinement

In Counts 6–10 and 24–28, Mr. Baltas alleges constitutional violations related to his conditions of confinement.  (ECF No. 1 ¶¶ 310, 313, 316, 319, 322, 366, 369, 373, 376, 379.)  While the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), prison conditions can rise to the level of a constitutional violation when they deprive the inmate of basic human needs like food, warmth, or exercise.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

"[A] prison official violates the Eighth Amendment only when two requirements are met."  *Cintron v. Bibeault*, 148 F.4th 37, 47 (1st Cir. 2025) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  "First, under the 'objective' requirement, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities such that the plaintiff is incarcerated under conditions posing a substantial risk of serious harm."  *Id.* (quotation marks and citations omitted).  "Second, under the 'subjective' requirement, a prison official must have a sufficiently culpable state of mind.  In prison-conditions cases[,] that state of mind is one of deliberate indifference to inmate health or safety."  *Id.* (quotation marks and citations omitted).

Mr. Baltas alleges that the conditions of his cell included "24-hour in-cell illumination, loud noises, extreme temperature, and [an] undersized bed," making it difficult to sleep. He also alleges poor quality of food and unsanitary and unsafe bathing conditions, deprivation of basic hyenine products, and restricted access to media and outdoor exercise. (ECF No. 1 ¶¶ 310, 313, 316, 319, 322.) The First Circuit recently held that long-term sleep deprivation "closely aligns with the types of injuries that other courts have recognized as satisfying the Eighth Amendment's objective requirement." *Id.* at 49. Therefore, of these categories, at least with respect to sleep deprivation, Mr. Baltas has alleged enough—at this early pleading stage—to satisfy the Eighth Amendment objective requirement.

On the subjective requirement, however, the plaintiffs' Complaint is less than clear. But given that he has asserted the beginnings of a constitutional claim, and considering his *pro se* status, the Court will allow Mr. Baltas 45 days from the date of this Order to file an amended complaint or these claims may be dismissed. Any amendment should focus only on these conditions of confinement claims and the supervisory liability claims (discussed below), comply with Fed. R. Civ. P. 8(a), and state with specificity the parties allegedly responsible and the actions that they allegedly took. The defendants may move to dismiss the amended complaint, and the Court will then consider whether the amended complaint plausibly sets forth an Eighth Amendment claim on the conditions of confinement. If necessary, the Court will also then consider the question of qualified immunity.

Thus, the Court defers on ruling on the State Defendants' Motion to Dismiss with respect to Counts 6–10 and 24–28.

### 4.    Counts 11–13: Claims Related to Medical Treatment

Turning to Counts 11 through 13, the plaintiff brings several claims for violations of the Eighth Amendment related to alleged problems with medical and mental health treatment and claims under the ADA and the Rehabilitation Act. (ECF No. 1 ¶¶ 326—334.) The State Defendants insist that these claims also fail because, without anything more, the plaintiff's disagreements as to proper medical care and treatment do not rise to a violation of rights protected under the Constitution or federal law. (ECF No. 74-1 at 23.)

To state a claim under the Eighth Amendment, the prisoner must show that prison officials were indifferent to their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Mr. Baltas suffers from a variety of health issues, including borderline personality disorder, anxiety, depression, hypertension, and nerve damage. (ECF No. 1 ¶¶ 38-45.) While he may have disagreements with RIDOC medical staff as to their treatment plans, this is insufficient to properly allege a violation under the Eighth Amendment. *Rivera*, No. CV 23-00418-MSM-PAS, at *7 ("A disagreement about the adequacy of [treatment] can illuminate the difference between an Eighth Amendment claim and a non-constitutional claim for medical malpractice or negligence.") Moreover, Mr. Baltas has not alleged that he was denied treatment or care, only that he disagrees with it. Even so, prison officials are afforded great deference in providing the medical treatment of prisoners in their care and the

record is clear that the State Defendants followed the advice of their medical staff and other professionals with respect to Mr. Baltas' treatment. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The State Defendants also argue that the ADA and the Rehabilitation Act does not apply to them in their individual capacities as they are not "public entities" under Title II. (ECF No. 74-1 at 23.) The Court agrees. *See Kiman v. New Hampshire Dep't of Corr.*, No. 01-CV-134-JD, 2007 WL 2247843, at *8 (D.N.H. Aug. 1, 2007) (adopting "unanimous view of the five circuits that have considered the issue" and concluding that Title II does not "provide[ ] a cause of action against individuals in their personal capacity[.]"); *see also Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) ("Title II provides disabled individuals redress for discrimination by a 'public entity.' *See* 42 U.S.C. § 12132. That term, as it is defined within the statute, does not include individuals. *See* 42 U.S.C. § 12131(1)[.]")

Moreover, the State Defendants argue that the ADA and Rehabilitation Act do not apply to the plaintiff because he has not alleged any facts that show he was denied programs and services based on his disability or that he was excluded due to his disability. (ECF No. 74-1 at 23-25.) Because claims under the ADA and the Rehabilitations Act address "the same type of discrimination" the Court analyzes both "simultaneously through the rubric of the ADA." *Snell v. Neville*, 998 F.3d 474, 498 (1st Cir. 2021). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity." § 12132 (2000 ed.). The ADA defines a "qualified individual with a disability" as someone "with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). A "public entity" includes "any State or local government" and "any department, agency, . . . or other instrumentality of a State."[2] § 12131(1).

The plaintiff claims that the State Defendants failed to accommodate his disability by placing him in the Restorative Housing Program. (ECF No. 1 ¶¶ 101 (v), (rr), 128-129, 166, 188-190.) This allegation fails to establish an ADA or Rehabilitation Act claim. Mr. Baltas has not claimed that he was placed in the Restorative Housing Program because of his disability, rather, he claims that the State Defendants ignored it when placing him there. *See Brown v. Pennsylvania Dept. of Corr.*, 290 Fed. Appx. 463, 467 (3d Cir. 2008) (dismissing prisoner's ADA claim because he was not placed in a segregation unit due to his mental disabilities, nor was he denied access to treatment because of his disabilities).

As a result, Mr. Baltas' claims under the ADA and Rehabilitation Act fail as a matter of law. The State Defendant's Motion to Dismiss (ECF No. 74) is granted on Counts 11–13.

---

[2] The United States Supreme Court has held that this term includes state prisons. *See United States v. Georgia*, 546 U.S. 151, 153–54 (2006); P*ennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).

### 5.    Count 15: RLUIPA Claim

Next, in Count 15 Mr. Baltas alleges he was denied the ability to practice his religion and access resources to practice his religion.  (ECF No. 1 at ¶ 338.)  The State Defendants contend that the plaintiff cannot recover monetary damages from any of the State Defendants under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  (ECF No. 74-1 at 26.)  Indeed, RLUIPA does not allow for monetary damages "against state officials acting in their individual capacities or against a state agency or state officials acting in their official capacities because such claims are barred by sovereign immunity."  *Musterd v. Rhode Island Dep't of Health*, No. CV 17-124-JJM, 2018 WL 1684345, at *3 (D.R.I. Mar. 19, 2018), *report and recommendation adopted*, No. CV 17-124-JJM-PAS, 2018 WL 1700849 (D.R.I. Apr. 5, 2018); *see also Sossamon v. Texas*, 563 U.S. 277, 282 (2011); *Cryer v. Spencer*, 934 F. Supp. 2d 323, 333 (D. Mass. 2013).  To the extent that Mr. Baltas asks for monetary damages from the State Defendants under RLUIPA those claims fail as a matter of law.

To the extent that Mr. Baltas seeks equitable relief for the alleged violation of RLUIPA, the claim is moot because he no longer is in the custody of the State Defendants and has been relocated to Connecticut.  (ECF No. 87.)

Moreover, to the extent that the plaintiff intended to bring a claim under the Religious Freedom Restoration Act ("RFRA"), he has failed to state a claim as the State Defendants are not federal officials.  *See* 42 U.S.C. § 2000 *et seq.*; s*ee also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006) (RFRA provides for private cause of action against federal officials).

Mr. Baltas has not alleged facts sufficient to allege that the State Defendants violated his right to religious practice under RLUIPA or RFRA. The State Defendants Motion to Dismiss on Count 15 is granted.

### 6. Count 18: Due Process at Disciplinary Hearings

In Count 18, the plaintiff asserts that the disciplinary hearings at the Department of Corrections violated his right to due process. (ECF No. 1 ¶¶ 122, 129, 193-206, 210-216; 347-355.) He claims that both *Wolff v. McDonnell*, 418 U.S. 539 (1974) and the "Morris Rules" arising from *Morris v. Travisano*, 310 F. Supp. 857 (D.R.I. 1970) have been violated. *Id.* ¶ 347. The plaintiff also argues that the State Defendants failed to provide him adequate notice of the charge or of the evidence against him. *Id.* ¶ 348. In response, the State Defendants maintain that this claim fails as a matter of law because he is not entitled to injunctive relief, declaratory relief, or other damages under federal law and the plaintiff refused to participate in the hearings. (ECF No. 74-1 at 29.)

The plaintiff would not discuss the January 3, 2024, incident with the investigating supervisor. (ECF No. 1-21.) As to the January 18, 2014, incident, he "chose not to participate in the SO Review. A plea of guilty was entered in his behalf." *Id.* Thus, as the State Defendants argue Mr. Baltas was afforded due process for his disciplinary hearings, but he refused to participate. Consequently, Count 18 fails to state a claim and the State Defendants' Motion to Dismiss is granted.

### 7. Count 20 and 21: Retaliation

Turning to Mr. Baltas' allegations of retaliation, the State Defendants argue that these claims also fail because he has not plead sufficient facts to show the State Defendants took an adverse action against him. (ECF No. 74-1 at 31.) In Counts 20 and 21, Mr. Baltas claims that the State Defendants retaliated against him "by subjecting him to false disciplinary reports, harassments, threats, intimidations, slander, excessive discipline, denying him due process" and by destroying his property and legal documents during cell searches. (ECF No. 1 ¶¶ 357, 359.)

To make out a prima facie case of First Amendment retaliation, Mr. Baltas must demonstrate that: (1) he engaged in an activity protected by the First Amendment; (2) the defendants took an adverse action against him; and (3) there is a causal link between the protected activity and the adverse action. *Staples v. Gerry*, 923 F.3d 7 (1st Cir. 2019). A causal link requires the plaintiff to allege that the protected activity "was a substantial or motivating factor" for the adverse action. *Padilla-Garcia v. Rodriguez*, 212 F.3d 69, 74 (1st Cir. 2000). The "chronology of events" alleged must provide "support for an inference of retaliation." *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979). "Because prisoner retaliation claims are easily fabricated and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011) (cleaned up).

Construing his retaliation claims with leniency due to his *pro se* status, the Court reasons that Mr. Baltas' protected act was the filing of the Prison Rape Elimination Act ("PREA") Complaint.[3]  *See* ECF No. 1 ¶¶ 150-162, 177-180; *Instituto de Educacion Universal Corp.*, 209 F.3d at 23.  Even so, his claim fails because he has not alleged facts to show that the State Defendants took an adverse action against him.  While Mr. Baltas claims he was falsely charged with having a razor (ECF No. 1 ¶ 161), without an adverse action, his claim fails.  *See Starr v. Dube*, 334 F. App'x 341, 343 (1st Cir. 2009) ("Disciplinary charge filed against prisoner was not adverse act of kind that would deter persons of ordinary firmness from exercising their First Amendment rights"); *see also Morris v. Powell*, 449 F.3d 682, 685-86 (5th Cir.), *cert. denied*, 549 U.S. 1038 (2006) (explaining that certain adverse acts are *de minimis* acts if it causes inmate only a "few days of discomfort," imposes "a [single] minor sanction," or imposes otherwise constitutional restriction on the inmate).  Where, as here, the plaintiff had the opportunity to challenge the allegedly false charge, it would not deter those of "ordinary firmness" from engaging in a protected activity.  *Id.* at 343.  Moreover, Mr. Baltas does not include in his allegations whether the charge was adjudicated.  (ECF No. 1 ¶ 161.)  As such, without facts to support an allegation of an

---

[3] There is no private cause of action for inmates under PREA.  *See Fontes v. Lopez*, No. CV 20-151 WES, 2021 WL 3195176, at *3 (D.R.I. July 28, 2021).  PREA was enacted to address allegations of rape and sexual harassment within a prison facility and the remedy for a violation is disciplinary sanctions.  *See* 28 C.F.R. §§ 115.6, 115.76.  Count 21 based on alleged voyeurism by State Defendant Abbott fails because PREA does not provide for a private cause of action. *See* ECF No. 1 ¶¶ 150-162, 177-180; *Fontes*, No. CV 20-151 WES, at *3 (dismissing claim of sexual harassment under PREA).

adverse action taken by the State Defendants because of his filing of the PREA complaint, Counts 20 and 21 fail to state claims.

### 8. Count 22: Defamation

Next, Mr. Baltas' brings a claim of defamation related to him being called a snitch. (ECF No. 1 ¶¶ 101 (m), 239-240, 261.) The State Defendants argue that this claim fails as a matter of law because he has not plausibly alleged that they uttered a false and defamatory statement about him. (ECF No. 74-1 at 33.)

To bring a defamation claim under Rhode Island law, the plaintiff must plausibly allege "(1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages, unless the statement is actionable irrespective of special harm." *Sirois v. L'heureux*, No. CV 14-472 S, 2016 WL 7388322, at *3 (D.R.I. Dec. 21, 2016). The crux of Mr. Baltas' defamation claim is based on his being labeled a "snitch" in prison. *See* ECF No. 1 ¶¶ 240, 361. But he admits that "[the inmate] did not act" on the opportunity to harm him. *Id.* ¶ 240. As such, without any actual injury, the plaintiff's defamation claim fails as a matter of law.

### 9. Counts 29 and 30: Claims Related to Right of Access to Courts

In Counts 29 and 30, Mr. Baltas claims that his right of access to the courts has been restricted in both state and federal court. (ECF No. 1 ¶¶ 49-56, 167-168, 220-228, 231, 235-238, 249, 254, 260-263, 274-284, 390-91, 393.) The State Defendants maintain that these claims "lack[] any plausible support or allegation" and fail as a matter of law. (ECF No. 74-1 at 34.)

18

"It is axiomatic that prisoners have a constitutionally-protected right of meaningful access to the courts." *Bolvin v. Black*, 225 F.3d 36, 42 (1st Cir. 2000). Though "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996). Indeed, the prisoner must demonstrate an actual injury such as one where a "nonfrivolous legal claim" was "frustrated" or "impeded." *Id.*

While the plaintiff maintains he has been denied access to the state and federal courts, he has not alleged any facts to suggest that he suffered an injury to any cognizable legal claim. *See* ECF No. 1 ¶¶ 390-91, 393. Mr. Baltas has been active in several state and federal lawsuits, including this one. *See* ECF No. 74-2 Ex. B. While prisoners no doubt encounter difficulties accessing the judicial system as *pro se* litigants, on its face, Mr. Baltas' complaint fails to plausibly allege that the State Defendants denied his access to the court because he has not shown a "nonfrivolous legal claim" was "frustrated" or "impeded" by their conduct. *See Lewis*, 518 U.S. at 351-53. As such, Counts 29 and 30 fail as a matter of law.

### 10. Count 31: Claims Related to RIDOC's Policies and Practices

In Count 31, Mr. Baltas seeks equitable relief against policies that the States Defendants have created or enforced and that he alleges violate the Constitution and other laws. (ECF No. 1 ¶¶ 287, 396.) Given that Mr. Baltas is no longer incarcerated in Rhode Island and thus not subject to these policies, his equitable claims are now moot. Accordingly, Count 31 is moot.

### 11.    Count 32:  Supervisory Liability

The Court will defer on the question of supervisory liability (Count 32) until considering a motion to dismiss on an amended complaint, should one be filed.

### 12.    Count 33

In his thirty-third cause of action, Mr. Baltas states he is proceeding *pro se* and "claims any and all causes of action as the Court may liberally interpret."  (ECF No. 1 ¶ 403.)  The Court already has liberally construed the thirty-two other causes of action in the plaintiff's Complaint and declines to create more.  As such, Count 33 is dismissed.

## IV.    CONCLUSION

In sum, the State Defendants' Motion to Dismiss (ECF No. 74) is GRANTED as to Counts 1, 2, 3, 4, 5, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 29, 30, 31, and 33.  The Court will allow Mr. Baltas to file an amended complaint on the claims related to conditions of confinement (Counts 6-10 and 24-28) and supervisory liability (Count 32) within 45 days of this Order, as detailed above, or the case may be dismissed.

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge


September 30, 2025